(35 Misc. Rep. 384.)

## HEALY v. BURKE.

(City Court of New York, General Term.  June, 1901.)

1. INJURY TO EMPLOYE—DEFECTIVE SCAFFOLD.
    Under Laws 1897, c. 415, § 18, providing that an employer is liable who does not furnish a safe scaffold for the use of his employés in the erection of a building, an employer is not only bound to furnish a safe scaffold, but must maintain it in such condition during the work.

2. SAME—CONTRIBUTORY NEGLIGENCE.
    A laborer was removing bricks in a wheelbarrow on a scaffold made of planks which overlapped the joints. With an intent to remove the scaffold, an overlapping plank, which might have prevented the accident, was removed by order of the foreman at a time when the laborer was occupied below, with no knowledge of such change. When he was ordered by the foreman to go on the scaffold, he failed to observe the absence of the overlapping plank, and was thrown from the scaffold. *Held*, that he was entitled to recover.

Appeal from trial term.
Action by Thomas Healy against Luke A. Burke.  Judgment for defendant, and plaintiff appeals.  Reversed.
Argued before CONLAN and O'DWYER, JJ.

Leventritt & Brennan (George M. Leventritt and Samuel P. Goldman, of counsel), for appellant.
Blumenstiel & Hirsch (Morris J. Hirsch, of counsel), for respondent.

O'DWYER, J.  Upon the trial it appeared that the defendant was erecting a building at Attorney and Rivington streets, New York City; that the plaintiff was a day laborer, and was working for the defendant on the day of the accident under the immediate supervision, control, and direction of one John Horgan, who was the foreman, also in the employ of the defendant; that on the day of the accident, about 2 or 3 o'clock in the afternoon, the foreman directed the plaintiff to remove some brick from a certain scaffolding in said building.  The scaffolding was constructed of boards over beams, the ends of the boards meeting.  There was a lap or board across the planks that held the planks in place.  These boards or planks were about 13 or 14 feet long, and, from the testimony of the witnesses in regard to them, it would appear that they were the usual planks about a foot wide and about an inch thick.  To reach the scaffold, it was necessary to come down one runway and go up another.  The plaintiff, pursuant to the direction of his foreman, had removed about 13 or 14 wheelbarrows of brick from the scaffold, and was about to take another load.  It seems that he went up the runway and passed along on the scaffold, and had reached a place over 40 feet from the runway, when, with his wheelbarrow in front of him, he stooped to fill it up with brick, and the

plank tipped with him and he went down. Plaintiff gave, as his version of the reason why the plank tipped with him and he went down, the fact that the lap had been taken off from the end of the plank on which he had to step. He further testified that the scaffold was all right at the time he went on it for his first 13 or 14 loads, but that it was not left so; that the foreman sent a man to take off the plank while plaintiff was away with a load of brick, and that he knew nothing at all about the plank (lap) being off; that when he came back on his last trip he did not look to see whether the lap was in place or not, as he was in a hurry; that the foreman was over him and had told him to hurry up. He further said the lap was there before his last trip; that the lap was not nailed; that he did not think any of the laps were nailed, and he did not see anybody remove the lap from the plank on which he fell, nor was he told that the lap was removed; and that he did not know the scaffolding was being taken down. It was also proven by the testimony of James McElroy that the scaffold was being taken down under the direction of Horgan, the foreman. Referring to this, McElroy swore that "they were doing that, and were told to rush the work." Upon cross examination this witness swore that "the plank was passed up by Cuneo [another worker] before he took off all the bricks." This witness saw the accident, and described it as follows:

"Healy went up there to remove the brick. Q. And while he was in the course of this trip—[interrupted]? A. Charlie Cuneo [another workman] passed the plank up to the next floor. Then Healy went on the scaffold, put his wheelbarrow down, and toppled over. I saw the plank tip up. He was stooping down."

Section 18 of the labor law (Laws 1897, c. 415) provides:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering, or painting of a house, building or structure, shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of the person so employed or engaged."

The law thus declares that the defendant was bound to erect and furnish a safe, suitable, and proper scaffolding for the use of this plaintiff; and, when the law has so declared, it is but reasonable to say that the intention of the law is that the duty thus imposed can only be performed by maintaining the condition that the law required to be created. It thus follows that not only was it the duty of the defendant to erect and furnish a safe scaffold, but he was bound to maintain it in that condition during the time the plaintiff was required to work thereon pursuant to his orders, and his failure to do so would be negligence. The fact that the plaintiff did not look and observe that the lapped plank had been removed did not create a question of law, but one of fact, as to his con-

tributory negligence, and that question was for the jury to determine.

The claim that the accident occurred through the negligence of a fellow servant is without force, under the facts in this case. We hold that defendant's duty called upon him to provide a safe and suitable scaffold for the plaintiff to work upon, and to maintain the same in a safe and suitable condition. The judgment appealed from should be reversed, and a new trial ordered, with costs to appellant to abide the event.

Judgment reversed, and new trial ordered, with costs to appellant to abide event.

CONLAN, J., concurs.